**UNITED STATES FIDELITY AND GUARANTY CO., Appellant,**

v.

**HUTSON CONSTRUCTION CO., INC., Appellee/Cross-Appellant.**

No. 19035.

Court of Civil Appeals of Texas, Dallas.

Nov. 30, 1976.

Rehearing Denied Dec. 30, 1976.

Robert M. Greenberg, Greenberg & Bach, Dallas, for appellant.

W. Mike Baggett, Winstead, McGuire, Sechrest & Trimble, Dallas, for appellee/cross-appellant.

CLAUDE WILLIAMS, Chief Justice.

United States Fidelity and Guaranty Company and Hutson Construction Company, Inc. both appeal from a judgment of the trial court in favor of Hutson Construction Company, Inc. in the sum of $5,000 against United States Fidelity and Guaranty Company for a theft loss on a builders risk policy of insurance. Appellant United

States Fidelity and Guaranty Company (USF&G) seeks reversal and rendition of the judgment because the goods stolen were not in "due course of transit," as provided by the policy, and, therefore, appellee Hutson Construction Company (Hutson) was not entitled to recover, as a matter of law. Hutson appeals from the judgment contending that it was entitled to recover a larger amount because of an accord and satisfaction made between the parties. We hold that the record establishes, as a matter of law, that the property in question was not covered by the insurance agreement and that there was no accord and satisfaction between the parties. Accordingly, the judgment of the trial court is reversed and judgment is rendered that Hutson take nothing against USF&G.

The material facts are essentially without dispute. Hutson was the contractor on a project in Paris, Texas. Hutson obtained from USF&G its builders risk insurance policy which expressly provided for limits of liability in the sum of $338,134 in the event the property was lost while at the premises located at Paris, Texas and with the limitation of loss in the sum of $5,000 on property "in due course of transit." This policy was effective on April 23, 1974, when property owned by Hutson with an actual cash value in excess of $5,000 was stolen from the Hutson warehouse at Duncanville, Texas. The stolen property was copper wiring which Hutson obtained from various sources and transported to its warehouse in Duncanville where it was stored in an identifiable area and intended for use at the construction project in Paris. The wire arrived at the warehouse at various times. Some of it had been in the warehouse as long as three months and some had been there for only a week prior to the theft. As needed, the wire would be removed from the warehouse and transported to the job site in Paris. It is undisputed that Hutson did not obtain insurance coverage on the property while it was stored in the warehouse in Duncanville.

On the basis of this evidence USF&G moved for an instructed verdict on the ground that the undisputed evidence demonstrated that the property in question was not "in due course of transit" at the time of the loss and, therefore, not covered by the policy, as a matter of law. This motion was overruled and the court proceeded to submit the case to the jury on one special issue which inquired whether or not the property in question was in "due course of transit." The jury answered in the affirmative, and based upon this verdict, judgment was rendered in favor of Hutson and against USF&G in the sum of $5,000. USF&G moved for judgment *non obstante veredicto* on the same grounds as were assigned in support of the motion for instructed verdict. The court overruled this motion.

It thus becomes apparent that the primary question presented is one of coverage under the policy between USF&G and Hutson.

### Policy Coverage—In Due Course of Transit

The question whether property is "in transit" was presented to the Supreme Court of Texas in 1896 in the case of *Amory Manufacturing Co. v. Gulf, C. & S. F. Ry.*, 89 Tex. 419, 37 S.W. 856 (1896). Chief Justice Gaines drew the distinction between the words "in transit" and the words "in transitu," as used in a bill of lading covering shipment of cotton which had been lost while stored on a platform of the railway company. The court pointed out that the two terms have a different meaning and that "in transit" means literally in the course of passing from point to point. The court held that the cotton, not having been set in motion towards its destination, was not in fact in transit and was not constructively in transit while on the platform and that to hold otherwise would be doing violence to a well-established canon of construction. *Accord, Davis v. First National Bank*, 245 S.W. 1009 (Tex.Civ.App.—Texarkana 1922, writ ref'd).

A very similar question involving the construction of an insurance contract providing coverage for property "in transit" was presented in *Simons v. Niagra Fire Insur-*

*ance Co.*, 398 S.W.2d 833, 834 (Tex.Civ.App. —Fort Worth 1968, no writ). In that case, the policy provided coverage against loss or damage to property while in transit. The property, consisting of quantity of grain, was purchased by the insured, and before delivery to the insured, it was placed in storage in an elevator where a portion was stolen. The court denied coverage under the policy holding that the word transit has a significance of activity, of motion and of direction. Literally it means "in course of passing from point to point." In holding that the trial court properly construed the insurance contract to cover losses only while the goods were in transit and not while stored in an elevator, the court of civil appeals relied upon *Mayflower Dairy Products, Inc. v. Fidelity-Phenix Fire Insurance Co.*, 170 Misc. 2, 9 N.Y.S.2d 892 (1938); *Glenmore Silk Corp. v. Fidelity & Guaranty Fire Corp.*, 151 Misc. 734, 271 N.Y.S. 174 (1934); *Annot.*, 80 A.L.R.2d 445–55, § 3 (1961); *Annot.*, 37 A.L.R.2d 1103, § 16 (1954).

*Haggar Co. v. United States Fire Insurance Co.*, 497 S.W.2d 61, 63–64 (Tex.Civ. App.—Texarkana 1973, no writ), involved a similar policy of insurance protecting the property while "in transit." When a truck, used in delivering the property to the named insured, arrived at the loading dock of the insured, the warehouse door was locked and the truck could not be unloaded until after the weekend. The goods in question were stolen off the truck while parked at the loading dock and an action was brought against the insurance company on the theory that the property was lost while in transit. The policy of insurance was construed as being ineffective in that according to the facts established, as a matter of law the property was not in transit at the time of the loss. The court pointed out that the act of passing from the point of origin to the destination point, as contemplated by the phrase "in transit," was completed when the driver parked the trailer at the dock ready to be unloaded. The court expressly refused to follow *Gulf Insurance Co. v. Ball*, 324 S.W.2d 605 (Tex.Civ.App.—

Amarillo 1959, writ ref'd n. r. e.) relied upon by Hutson in this case.

*Gulf Insurance Co. v. Ball, supra*, is clearly distinguishable. In that case the goods covered by the insurance policy were in a truck and being transported to destination. While on the highway the truck broke down and the driver sought assistance. Before assistance could be obtained the truck was invaded by someone who stole the property. The court correctly held under those facts that the property was still "in transit" saying that so long as the property is in the course of being delivered to the place to which it is being shipped, it is, in truth, in transit.

The goods in question before us had been delivered to the Hutson warehouse at Duncanville, Texas, many miles from Paris, Texas, and remained there for a period of from one week to three months. We find no rational basis for the contention that such goods could be said to be "in transit" within the meaning of the terms of the insurance policy between the parties. To hold otherwise would most assuredly create a new contract. Under the plain and unambiguous terms of this policy and under the authorities above cited, we hold that, as a matter of law, the property in question was not covered by the insurance contract and, therefore, the trial court erred in failing to render judgment for USF&G, *non obstante veredicto.*

### Accord and Satisfaction

We now turn to Hutson's appeal. As an alternative plea, Hutson alleged that, upon initial receipt of the claim by Hutson under the policy of insurance, USF&G issued a check in the amount of $7,581 as its offer of a complete accord and satisfaction of the claim under the policy and that Hutson accepted the terms of the offer by endorsing the check and depositing it to its account. It was alleged that subsequent to the offer and acceptance USF&G, in breach of the accord and satisfaction agreement, stopped payment on the check and refused to honor it. For such alleged breach of the accord and satisfaction agreement, Hutson

sought judgment in the sum of $7,581, together with interest and penalty as well as attorney's fees.

Prior to trial, the court sustained the objection of USF&G to the introduction before the jury of any evidence relating to the alleged accord and satisfaction. During the course of the trial Hutson perfected a bill of exception in which testimony was offered and a stipulation entered which revealed that Hutson had originally made a claim against USF&G in the amount of $9,331.20. Hutson, president of appellee corporation, testified that the claims representative of USF&G offered to settle for "$7,800 something." Hutson then said that he received a check from USF&G in the sum of $7,581 which he endorsed and deposited. Subsequently, USF&G stopped payment on the check or draft contending that an error had been made in the issuance of such instrument.

■ While Hutson contends that the trial court erred in not rendering judgment in its favor against USF&G in the amount of $7,581 on the theory of an accord and satisfaction it is apparent from the record that it really takes the position that judgment of the trial court should be reversed and remanded for a new trial because of the failure of the trial judge to allow the evidence relating to accord and satisfaction to be presented to the jury. We reach this position as a result of the argument contained in Hutson's brief and, accordingly, overrule USF&G's objection to our consideration of the point because no point of error was assigned.

■ Our supreme court in *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454 (Tex. 1969) had occasion to reiterate the essential elements to establish the affirmative defense of accord and satisfaction. The supreme court pointed out that there must be evidence of a new contract, express or implied, in which the parties agreed to the discharge of existing obligations by means of the lesser payment tendered and accepted and that the evidence must conclusively establish that the tender of the lesser sum is upon the condition that acceptance will

constitute satisfaction of the underlying obligation. *Accord, Industrial Life Insurance Co. v. Finley*, 382 S.W.2d 100 (Tex.1964) and *George Linskie Co. v. Miller-Picking Corp.*, 463 S.W.2d 170 (Tex.1971).

■ In the case under consideration the admitted maximum that could possibly be recovered by Hutson under the "in transit" coverage of the builders risk insurance policy was the maximum sum of $5,000. The tender by the insurance adjuster for USF&G of a check or draft in the sum of $7,581 was evidently a mistake on the part of the adjuster. Although release of a claim in an amount greater than the sum agreed upon is ordinarily sufficient consideration, there is no consideration if the amount agreed upon is more than the policy limit. Moreover, as we have already held, the policy in question provided no coverage for the loss in question.

In *Hodges Food Stores, Inc. v. Gulf Insurance Co.*, 441 S.W.2d 309 (Tex.Civ.App.—Dallas 1969, no writ), we ruled upon a similar case in which the insurer had paid an amount of money to the insured due to a mistake concerning policy coverage. In that case the policy provided no coverage for the loss in question, but the insurer had paid the full amount of the claim. We held that the insurer was entitled to recover the amount it had paid. Our opinion in *Hodges Food Stores, Inc., supra*, was followed by the San Antonio Court of Civil Appeals in *Singer v. St. Paul Mercury Insurance Co.*, 478 S.W.2d 579 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.). In that case, as here, the company draft was issued for a loss not covered by a policy and the court denied the plea of accord and satisfaction. To the same effect see our opinion in *Benson v. Travelers Insurance Co.*, 464 S.W.2d 709 (Tex.Civ.App.—Dallas 1971, no writ).

■ We do not hold that a disputed coverage question cannot be resolved by an agreement to pay an amount within the policy limits if the elements of a new contract are present. Here, however, there was a dispute concerning the limit, if any coverage at all was provided, and the

amount of the check was more than the limit. Consequently, the agreement was entirely lacking in consideration.

We overrule all of Hutson's cross-points of error concerning the theory of accord and satisfaction.

For the reasons stated, the judgment of the trial court is reversed and here rendered that Hutson Construction Company, Inc. do have and recover nothing of and from United States Fidelity and Guaranty Company and that all costs be assessed against Hutson Construction Company, Inc.