# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
July 8, 2020 Session

## JEREMY ARCHER ET AL. V. THE HOME TEAM, INC. ET AL.

**Appeal from the Chancery Court for Rutherford County**
**No. 17-CV-1631     J. Mark Rogers, Chancellor**

___

### No. M2019-01898-COA-R3-CV

___

This appeal arises from an alleged misrepresentation of real estate acreage. The plaintiffs commenced an action against both the real estate agent and the seller claiming they misrepresented that the property was 1.9 acres when it was only 1.16 acres. They asserted claims against the real estate agent for misrepresentation and concealment and claims against the seller for, *inter alia*, misrepresentation, concealment, and breach of contract. Following discovery, the seller and real estate agent each filed motions for summary judgment. The trial court summarily dismissed all claims against the real estate agent. The court granted the seller partial summary judgment dismissing the claims based on misrepresentation, concealment, and breach of contract. We affirm the dismissal of the misrepresentation claims against both defendants because the undisputed facts establish that the plaintiffs did not rely on the alleged misrepresentations in deciding to purchase the property. We also affirm the dismissal of the plaintiffs' concealment claims based on the plaintiffs' constructive notice of the correct acreage by way of a publicly recorded plat. Additionally, we affirm the summary dismissal of the breach of contract claim given that the warranty deed identifies the property by reference to the recorded plat, which shows the correct acreage.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT, J., joined. RICHARD H. DINKINS, J., not participating.

Jay B. Jackson, Murfreesboro, Tennessee, for the appellants, Jeremy Archer and Crystal Archer.

Janet Strevel Hayes and Ann Hogan Murphy, Knoxville, Tennessee, for the appellee, The Home Team, Inc.

David A. Bates and Keaton A. Rye, Franklin, Tennessee, for the appellee, Steven Taylor.

## OPINION

This case involves the purchase and sale of a newly constructed home and a residential lot identified by a publicly recorded plat as Lot 2 in the Hall Farm Subdivision in Rutherford County, Tennessee ("the property"). The buyers were Jeremy and Crystal Archer (collectively, "Plaintiffs"). The seller was The Home Team, Inc. ("The Home Team"), and Steven Taylor ("Mr. Taylor") served as The Home Team's real estate agent.

The property, was one of two adjoining lots shown in plat book 39, page 170, Rutherford County Register of Deeds Office, purchased by The Home Team. The final plat showed that Lot 1 contained 1.9 acres and Lot 2, the property, contained 1.16 acres. After The Home Team began constructing a new home on each lot, Mr. Taylor created a listing through the Multiple Listing Service ("MLS"), which was made available to the general public on the internet.[1] The MLS identified the property as "2 McKee Road" and incorrectly stated that it contained 1.9 acres.

Following preliminary discussions between Mr. Taylor and Plaintiffs and visits to the property by Plaintiffs, the parties executed a purchase and sale agreement on February 23, 2017. The purchase and sale agreement identified the property as: "All that tract of land known as: 2 Mckee Road, Lascassas, Tennessee, 37085, as recorded in Rutherford County Register of Deeds Office."[2] The deed book and page numbers were left blank.

Plaintiffs moved into the home on April 10, 2017, four days prior to the closing. The sale closed on April 14, 2017, at which time The Home Team conveyed title to the property by a warranty deed.

On September 29, 2017, Plaintiffs filed a complaint against The Home Team and Mr. Taylor, (collectively, "Defendants") in Rutherford County Chancery Court. Plaintiffs alleged that Defendants misrepresented, through the MLS listing and orally, that the property contained 1.9 acres when it actually contained 1.16 acres. Plaintiffs also alleged, generally, that Defendants "hid" the true acreage from Plaintiffs. Plaintiffs contended the acreage was a material factor in deciding to purchase the property, and they justifiably relied on Defendants' misrepresentations.

---

[1] The postal address for Lot 2 is 9933 McKee Road, Lascassas, TN 37085.

[2] The purchase and sale agreement described the property as follows: "All that tract of land known as: __2 Mckee Road__ (Address) __Lascassas__ (City), Tennessee, __37085__ (Zip), as recorded in __Rutherford County [sic]__ County Register of Deeds Office, _____ deed book(s), _____ page(s), . . ."

Based on those alleged facts, Plaintiffs claimed Mr. Taylor was liable for intentional or reckless misrepresentation, negligent misrepresentation, and non-disclosure or concealment. Plaintiffs claimed The Home Team was liable for intentional or reckless misrepresentation, non-disclosure or concealment, breach of purchase contract, breach of warranty, and reformation of the transaction.[3] As a remedy, Plaintiffs requested, *inter alia*, that the court reform the transaction by awarding Plaintiffs additional acreage from Lot 1 so that Plaintiffs received a lot containing 1.9 acres. Thus, in addition to their complaint, Plaintiffs filed an Abstract and Notice to Fix a Lien Lis Pendens to Lot 1.

Thereafter, The Home Team and Mr. Taylor each filed separate answers denying Plaintiffs' claims, and the parties proceeded with discovery.[4]

Following discovery, The Home Team filed a motion for summary judgment as to Plaintiffs' claims of misrepresentation, non-disclosure or concealment, breach of contract, breach of warranty, and reformation. In addressing the misrepresentation and concealment claims, The Home Team contended it was undisputed that The Home Team did not prepare the MLS data containing the alleged misrepresentation; Mr. Taylor did. Additionally, The Home Team submitted a copy of the final plat recorded on April 11, 2016, by the Rutherford County Register of Deeds showing that the property contained 1.16 acres. The Home Team argued Plaintiffs' misrepresentation and concealment claims failed as a matter of law because Plaintiffs had constructive notice of the correct acreage through the recorded plat.

With regard to the breach of contract, breach of warranty, and reformation claims, The Home Team argued that, through the doctrine of merger, the purchase and sale agreement merged into the warranty deed, such that the warranty deed became the final contract between the parties. The warranty deed submitted by The Home Team did not explicitly provide the acreage of the property but identified it by reference to the final plat, which stated the correct acreage. Therefore, the breach of contract, breach of warranty and reformation claims failed as a matter of law.

Additionally, The Home Team filed a supplement to its motion for summary judgment to address Plaintiffs' allegation that The Home Team's owner and president, Shannon Hicks, orally misrepresented to them on one occasion that the property contained approximately two acres. The Home Team identified and relied on evidence which established, without dispute, that Mr. Hicks made the statement after the purchase and sale

---

[3] Plaintiffs also filed other claims against The Home Team, and The Home Team included some of those claims in their motion for summary judgment, but they are not the subject of this appeal.

[4] The Home Team also filed counter claims, but they are not the subject of this appeal.

agreement was executed. Therefore, Plaintiffs could not have relied on the alleged misrepresentation in deciding to purchase the property.

Mr. Taylor filed a separate motion for summary judgment as to all claims against him. Mr. Taylor conceded he erred when preparing the MLS data, in that, he mistakenly identified the property as Lot 1 and stated that it was 1.9 acres. This error notwithstanding, Mr. Taylor asserted that Plaintiffs were aware they were purchasing Lot 2. Moreover, he identified and relied on the Disclaimer Notice Plaintiffs executed, which stated in bold type immediately above their signatures: "**The buyers and sellers acknowledge that they have not relied upon the advice, casual comments, or verbal representations of any real estate licensee relative to any of the matters itemized above or similar matters.**" Further, Mr. Taylor asserted that Plaintiffs' misrepresentation and concealment claims failed because the true acreage of the property was a matter of public record, and the Disclaimer Notice urged Plaintiffs to conduct an independent investigation into the correct acreage of the property and advised Plaintiffs not to rely on the MLS data for that information.

In Plaintiffs' response to both motions, Plaintiffs submitted their affidavits, each stating that the MLS identified the property as Lot 1, not Lot 2, and that the lot was approximately two acres. Plaintiffs claimed they relied on those misrepresentations when they decided to purchase the property. They also claimed that Defendants "held information from us that prevented us from being able to locate the real estate plat in the Register of Deeds Office. We could not locate the recorded plat with the information given to us nor were we ever told there was a recorded plat to locate[.]"

The trial court held a hearing on both motions on February 14, 2019. On March 7, 2019, the trial court summarily dismissed Plaintiffs' reformation claim and ordered that the lien lis pendens be removed from Lot 1.

In an order entered September 24, 2019, the trial court granted partial summary judgment to The Home Team for intentional or reckless misrepresentation, misrepresentation by concealment or non-disclosure, breach of purchase contract, and breach of warranty. Specifically, the court found:

> Notably, [Plaintiffs] moved into the home located on the property four days prior to closing, and on the date of closing acknowledged and accepted the closing documents including the Purchase and Sale Agreement and Warranty Deed. The Doctrine of Merger necessitates this Court to conclude that the accepted documents contain the entire agreement between the parties. . . .
>
> The Warranty Deed clearly and unmistakably identifies the property as that contained in Plat Book 39 at page 170 as the real property contracted for, purchased by, and conveyed to [Plaintiffs] on the date of closing. There was

no justifiable reliance by [Plaintiffs] on an MLS listing not mentioned or incorporated in the Warranty Deed. The exact acreage of the subject property was not concealed, as it was a matter of public record of which [Plaintiffs] had notice. [Plaintiffs] were on notice of the actual acreage of the subject property as a matter of law. Any mistake of [Plaintiffs] regarding disparity in the amount of acreage listed between the MLS and the Plat Book is inexcusable and immaterial. . . . The record notice of the acreage conveyed in the real estate transfer is fatal to [Plaintiffs'] claims.

In a separate order entered on the same day, the trial court summarily dismissed all claims against Mr. Taylor based on the foregoing reasoning and the following:

[Plaintiffs'] claims of misrepresentation, non-disclosure, and concealment are barred by [Plaintiffs'] signing of the written Disclaimer Notice on February 23, 2017, coupled with their failure to exercise ordinary diligence and failure to discover reasonably discoverable information prior to closing. The contract language regarding disclaimer and record notice of the acreage conveyed in the real estate transfer are fatal to [Plaintiffs'] claims.

Plaintiffs appealed the trial court's grant of summary judgment on all claims against Mr. Taylor pursuant to Tenn. R. App. P. 3. Plaintiffs also obtained permission from the trial court to file an interlocutory appeal pursuant to Tenn. R. App. P. 9 to challenge the trial court's grant of partial summary judgment to The Home Team. We granted Plaintiffs' Rule 9 application and consolidated both appeals.

### STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is

insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264 (emphasis in original).

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue for trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

## ANALYSIS

Plaintiffs contend the trial court erred by summarily dismissing their claims of misrepresentation and concealment against both defendants and by summarily dismissing their breach of contract claim against The Home Team.[5]

## I. MISREPRESENTATION

Plaintiffs contend Defendants misrepresented the acreage of the property, which was a material consideration when they decided to purchase it. Defendants argue that there is no evidence of reliance, and even so, Plaintiffs' claims fail based on their constructive knowledge of the correct acreage.

A claim for intentional or reckless misrepresentation requires proof that

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008).

---

[5] Plaintiffs also contend the trial court erred on March 7, 2019, by ordering that the lien lis pendens be removed from Lot 1. The Home Team argues that the issue is not properly before this court because we granted Plaintiffs' interlocutory appeal only as to the September 24, 2019 order. We agree. "Under Rule 9 of the Tennessee Rules of Appellate Procedure, we are limited on appeal to the questions certified by the trial court in its order granting permission to seek an interlocutory appeal and in this Court's order granting the appeal." *In re Bridgestone/Firestone*, 286 S.W.3d 898, 902 (Tenn. Ct. App. 2008). Therefore, we will not consider the lis pendens issue. Even so, the issue is pretermitted by our ruling on the other issues.

Similarly, a claim for negligent misrepresentation requires proof that the defendant supplied false information to the plaintiff, did not exercise reasonable care in obtaining or communicating the false information, and the plaintiff justifiably relied on the information. *Id*. (citing *Williams v. Berube & Assocs*., 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000); *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997)).

Because Plaintiffs' claims of misrepresentation against The Home Team and Mr. Taylor are based on different facts, we will discuss each claim separately.

A.  The Home Team

Plaintiffs' claim against The Home Team is based on the allegation that Mr. Hicks orally misrepresented to them, on one occasion, that the property was about two acres. Crystal Archer's deposition testimony was as follows:

Q. We've talked about a conversation with Shannon Hicks in which you allege he said it was two acres; do you recall that conversation?

A. Uh-hum. I do.

Q. Okay. And it was just one conversation –

A. Yes.

Q. –there wasn't multiple times?

A. Just one conversation.

Q. When Jeremy was testifying he couldn't really nail down a date of when that occurred, so just so we can have a timeline, he had said that it was after the driveway was completed?

A. Correct. Which the driveway was poured. And it shows in e-mails that Shannon e-mailed me on March 14 that the concrete would be poured the next day. So on March 15, sometime, therefore, or after.

.     .     .

Q. Okay. So this conversation would have occurred sometime in the middle of March?

A. Possibly. It was between middle of March to sometime before closing.

Q. Okay. But it definitely did not occur before March 1?

A. Correct.

In addition to Mrs. Archer's testimony, Mr. Hicks testified that he only spoke with Plaintiffs on one occasion, which was after Plaintiffs executed the purchase and sale agreement on February 23, 2017. Therefore, no reasonable trier of fact could find that Plaintiffs relied on Mr. Hicks' alleged misrepresentation of the acreage when deciding to purchase the property.

Accordingly, we affirm the summary dismissal of Plaintiffs' misrepresentation claim against The Home Team.

## B.  Steven Taylor

Plaintiffs' claim that Mr. Taylor intentionally, recklessly, and negligently misrepresented the acreage of the property, orally and through the MLS, and Plaintiffs justifiably relied on his alleged misrepresentations. Although Mr. Taylor admits that he negligently misrepresented the acreage, he relies on the Disclaimer Notice to refute Plaintiffs' claim that they relied on his representations in deciding to purchase the property.

The Disclaimer Notice provides, in relevant part:

> **8. BOUNDARY LINES, EASEMENTS, ENCROACHMENTS, AND ACREAGE.** It is strongly advised that you secure the services of a licensed surveyor for a full-stake boundary survey with all boundary lines, easements, encroachments, flood zones, total acreage, etc., clearly identified. ***It is also advised that you not rely on mortgage loan inspection surveys, previous surveys, plat data, or Multiple Listing Service (MLS) data for this information, even if acceptable to your lender***.

(Emphasis added).

And following paragraph 8, just above Plaintiffs' signatures, in bold type, the Disclaimer Notice states:

> **The buyers and sellers acknowledge that they have not relied upon the advice, casual comments, or verbal representations of any real estate licensee relative to any of the matters itemized above or similar matters. The buyers and sellers understand that it has been strongly recommended that they secure the services of appropriately credentialed experts and professionals of the buyer's or seller's choice for the advice and counsel about these and similar concerns.**

Therefore, no reasonable juror could find that Plaintiffs relied on Mr. Taylor's representations or that Plaintiffs' reliance on the MLS data was justified.

Accordingly, we affirm the trial court's decision to summarily dismiss the misrepresentation claims against Mr. Taylor.[6]

## II. CONCEALMENT

Plaintiffs base their concealment claims on the allegation that Defendants "hid" the correct acreage from Plaintiffs by failing to inform Plaintiffs of the recorded plat's existence and by withholding pertinent information needed to locate the plat. Additionally, Plaintiffs contend that, had they viewed the plat, "no problem would have been readily apparent anyway" because Mr. Taylor referred to the property as Lot 1 in the MLS, and Lot 1 contained 1.9 acres. Defendants counter insisting Plaintiffs knew they were buying Lot 2, and they had constructive knowledge of the correct acreage of Lot 2. Moreover, Defendants insist they had no duty to disclose the acreage of the property because it was discoverable through ordinary diligence.

A defendant is liable for non-disclosure or concealment when the defendant has a duty to disclose a known fact, the defendant fails to disclose that fact, and the plaintiff reasonably relies on the resulting misrepresentation, which causes injury. *Odom v. Oliver*, 310 S.W.3d 344, 349 (Tenn. Ct. App. 2009); *Justice v. Anderson Co.*, 955 S.W.2d 613, 616 (Tenn. Ct. App. 1997). There is no duty to disclose a fact "where ordinary diligence would have revealed the undisclosed fact." *Id*. at 350; *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp*., 387 S.W.3d 525, 550 (Tenn. Ct. App. 2012). "As a general rule[,] to constitute fraud by concealment or suppression of the truth there must be something more than mere silence, or a mere failure to disclose known facts." *Cont'l Land Co. v. Inv. Properties Co*., No. M1998-00431-COA-R3-CV, 1999 WL 1129025, at *5 (Tenn. Ct. App. Dec. 10, 1999) (quoting *Hall v. DeSaussure*, 297 S.W.2d 81, 87 (Tenn. 1956)). Concealment is "withholding information asked for, or . . . making use of some device to mislead, thus involving act and intention." *Id*. (quoting *Hall*, 297 S.W.2d at 87).

Pertinent here, when one "who is in possession of all material facts, either actually or ***constructively***, proceeds with a purchase of realty, notwithstanding such knowledge, such a person cannot thereafter recover on the basis of fraud, misrepresentation, or concealment of the information to which all parties had equal access." *Winstead*, 709

---

[6] In the following section we have determined that Plaintiff had constructive knowledge of the correct acreage, which is also fatal to Plaintiffs' misrepresentation claims. *See Winstead v. First Tenn. Bank N.A., Memphis*, 709 S.W.2d 627, 633 (Tenn. Ct. App. 1986).

S.W.2d at 633 (emphasis added). "Constructive notice is notice implied or imputed by operation of law and arises as a result of the legal act of recording an instrument under a statute by which recordation has the effect of constructive notice." *Blevins v. Johnson Cty.*, 746 S.W.2d 678, 682–83 (Tenn. 1988). "All recorded instruments such as deeds and judgments 'shall be notice to all the world from the time they are noted for registration, ... and shall take effect from such time.'" *Trent v. Mountain Commerce Bank*, No. E2018-01874-SCR-11-CV, 2020 WL 5036205, at *4 (Tenn. Aug. 26, 2020) (quoting Tenn. Code Ann. § 66-26-102).

On April 11, 2016, the Rutherford County Register of Deeds recorded a plat of the property in plat book 39, page 170. The plat showed four lots adjoining McKee Road, and it showed that Lot 2, the property, contained 1.16 acres.



Considering the evidence in the record, we find it disingenuous for Plaintiffs to argue that, had they viewed the plat, the correct acreage would not have been readily apparent. It is undisputed that Plaintiffs knew the physical location of the property; they moved into the home on the property four days before the closing.

Moreover, the evidence in the record shows that, aside from the initial misidentification of the property through the MLS as Lot 1, Defendants repeatedly referred to it as Lot 2. Mr. Archer conceded that fact in his deposition testimony:

> Q. And would you agree with me that as of [the day of closing], the property had been referred to to you all several times as being Lot Number Two?
>
> A. Yes.

And supporting Mr. Archer's deposition testimony is an email in the record from Mr. Taylor to Crystal Archer sent on February 14, 2017, which states in the subject line: "Lot

2 McKee Road questions." Therefore, it is undisputed that Defendants informed Plaintiffs that Plaintiffs were purchasing Lot 2 on McKee Road and the publicly available plat showed that Lot 2 contained 1.16 acres.

Given that the correct acreage was a matter of public record, Plaintiffs' concealment claims fail for two reasons: (1) Defendants did not have a duty to disclose the acreage of the property because publicly recorded information is discoverable through ordinary diligence, *see PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship*, 387 S.W.3d at 550; *See Trent*, 2020 WL 5036205, at *4 (publicly recorded information is accessible through ordinary diligence); and (2) a plaintiff cannot recover on a claim of misrepresentation or concealment when the plaintiff has constructive knowledge of the material fact at issue. *See Winstead*, 709 S.W.2d at 633.

Accordingly, we affirm the trial court's decision to summarily dismiss Plaintiffs' non-disclosure and concealment claims.

## II. BREACH OF CONTRACT

Plaintiffs contend The Home Team breached the purchase and sale agreement by conveying a lot containing 1.16 acres, instead of 1.9 acres. Plaintiffs contend the evidence in the record raises a genuine dispute as to that fact. They also assert that the purchase and sale agreement is ambiguous regarding the amount of acreage; therefore, parol evidence is admissible to make that determination.

The Home Team argues that, through the doctrine of merger, the purchase and sale agreement merged into the warranty deed, such that the warranty deed became the final contract between the parties. And the warranty deed is not ambiguous as to the property to be conveyed, identifying it by way of the publicly recorded plat, which states the correct acreage.

To prevail on a breach of contract claim, the plaintiff must establish "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (citations omitted).

> Tennessee recognizes the doctrine of merger whereby when "an executory contract has been entered into between the parties for the sale and purchase of real estate, and subsequently the property is conveyed by a deed to the purchaser named in the contract, that the contract of sale being merely an executory contract merges into the deed and the deed, therefore, becomes the final contract which governs and controls." *Fuller v. McCallum & Robinson,* 22 Tenn. App. 143, 118 S.W.2d 1028, 1037 (Tenn.Ct.App. 1937).

*City of Memphis for Use & Benefit of State v. Moore*, 818 S.W.2d 13, 15–16 (Tenn. Ct. App. 1991).

Plaintiffs' arguments focus on the purchase and sale agreement, which identified the property as "2 McKee Road" but did not provide the acreage. Defendants assert that "2 McKee Road" was in reference to Lot 2 on McKee Road. Plaintiffs argue that "2 McKee Road" is ambiguous and could refer to Lot 1. Plaintiffs also contend it is disputed whether Plaintiffs intended to purchase Lot 1 or Lot 2. However, this argument is unavailing considering that there is no evidence in the record to indicate that Plaintiffs intended to purchase Lot 1. On the contrary, the record shows that Plaintiffs visited Lot 2 on numerous occasions and moved into the newly-constructed home on Lot 2 four days prior to closing.

Nevertheless, through the doctrine of merger, the purchase and sale agreement merged into the warranty deed, such that the warranty deed became the final contract between the parties. And the warranty deed is unambiguous as to the property to be conveyed, describing it as follows:

> Being all of Lot No. 2 as shown on the Final Plat – Section I, Hall Farm Subdivision, as shown on the plan of record in Plat Book 39, page 170, Register's Office of Rutherford County, Tennessee, to which plat reference is hereby made for more complete details of location and description of said lot.

The final plat referenced in the deed shows that Lot 2 is 1.16 acres. Because the purchase and sale agreement merged into the warranty deed and the final plat is incorporated into the warranty deed, the amount of acreage to be conveyed is unambiguous. Therefore, parole evidence is inadmissible on this issue. *See Individual Healthcare Specialists*, *Inc. v. BlueCross BlueShield of Tennessee*, 566 S.W.3d 671, 694–95 (Tenn. 2019) (The parol evidence rule provides that an oral agreement made prior to or contemporaneous with the execution of a written contract cannot add to, vary, or contradict the unambiguous terms of the contract).

Accordingly, we affirm the summary dismissal of Plaintiffs' breach of contract claim.[7]

---

[7] Plaintiffs contend that the trial court erred in summarily dismissing Count IV of their complaint, which also states a claim for breach of warranty; however, Plaintiffs did not properly address the breach of warranty claim in their brief on appeal. "If we cannot ascertain that an issue is supported by adequate argument, compliance with [Tenn. R. App. P. 27] has not been achieved," and the issue is "subject to waiver." *Heflin v. Iberiabank Corp.* 571 S.W.3d 727, 734 (Tenn. Ct. App. 2018). Therefore, the issue is waived.

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Jeremy and Crystal Archer.

_____
FRANK G. CLEMENT JR., P.J., M.S.